UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CRISTIAN ALEXIS MORAN CORADO,

               Petitioner,

    v.

PAMELA BONDI, *et al.*,

               Respondents.

Case No. C26-1081-MLP

ORDER

Through counsel, Petitioner Cristian Alexis Moran Corado filed this petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging his detention by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. (Dkt. # 1.) Petitioner contends that his detention violates the Due Process Clause. (*Id.* at 2.) He seeks release from immigration custody and injunctive relief related to (1) any future redetention and (2) the use of "GPS ankle monitors." (*Id.* at 12.) Respondents filed a timely return (dkt. # 5) supported by the sworn declaration of Deportation Officer Sheldon Benjamin (dkt. # 6) and an unsworn declaration from their counsel, Michelle Lambert (dkt. # 7). Petitioner filed a traverse in reply. (Dkt. # 8.)

ORDER - 1

Having reviewed the parties' submissions and the governing law, the Court GRANTS in part the petition (dkt. # 1) and ORDERS that Petitioner be released from detention within twenty-four hours.[1]

## I.      BACKGROUND

Petitioner is a native and citizen of Guatemala who last entered the United States as a minor near Yuma, Arizona, on or around May 24, 2019. (Dkt. ## 1, ¶ 22; 5 at 5; Benjamin Decl., ¶ 3.) Petitioner was charged under § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA") and placed in removal proceedings. (Benjamin Decl., ¶ 4.)

On May 26, 2019, Petitioner was released on an Order of Release on Recognizance ("OREC"),[2] requiring him to abide by certain conditions of release. (Dkt. # 1, ¶ 24; Benjamin Decl., ¶ 5; Lambert Decl., Ex. C.) The OREC states that Petitioner's release is "in accordance with section 236 of the Immigration and Nationality Act." (Lambert Decl., Ex. C.)

On August 15, 2019, Enforcement and Removal Operations ("ERO") issued a Notice to Appear ("NTA"), charging Petitioner as a "[noncitizen] present in the United States without being admitted or paroled." (Benjamin Decl., ¶ 6; Lambert Decl., Ex. B.)

On September 16, 2022, Petitioner's removal proceedings were "terminated as a matter of prosecutorial discretion" pursuant to an unopposed motion by the Department of Homeland Security ("DHS"). (Dkt. # 1, ¶ 25; Benjamin Decl., ¶ 7; Lambert Decl., Ex. D at 3.) After Petitioner's removal proceedings were dismissed, ERO "deactivated Petitioner from [the] Alternative to Detention program" and "closed his case." (Benjamin Decl., ¶ 8.) The record does not reflect whether Petitioner was provided notice of his deactivation from the Alternative to

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 3.)

[2] Officer Benjamin's declaration states that Petitioner was released on an OREC on May 27, 2019. (*See* dkt. # 6, ¶ 5.)

ORDER - 2

Detention program or informed of any legal or practical significance such deactivation had for his prior OREC.

In December 2025, Homeland Security Investigations ("HSI") learned of a 2023 report from the Office of Child Services, filed by the Anchorage Police Department, which purported to document Petitioner being in a relationship with a fifteen-year-old girl at the time of the report. (Benjamin Decl., ¶ 9.) Based on what ERO characterized as the report's "serious assertions," ERO decided to arrest Petitioner and place him back into removal proceedings. (Dkt. # 5 at 6; Benjamin Decl., ¶ 9.) The record does not reflect that Petitioner has been charged with any crime stemming from that police report, and Petitioner asserts he has not. (Dkt. ## 1 at 9; 8 at 9.)

On January 31, 2026, ICE arrested Petitioner in Anchorage, Alaska, and transported him to the NWIPC. (Dkt. # 1, ¶ 27; Benjamin Decl., ¶ 10.) ERO issued a Warrant for Arrest (Form I-200) and served Petitioner with a new NTA, again charging him under INA § 212(a)(6)(A)(i). (Lambert Decl., Ex. G (NTA), F (Warrant).) As in 2019, the 2026 NTA charged Petitioner as a "[noncitizen] present in the United States without being admitted or paroled." (*Id.*, Ex. G.)

On February 20, 2026, Petitioner received a custody redetermination hearing in immigration court. (Dkt. # 6, ¶ 11.) The immigration judge concluded the immigration court lacked jurisdiction to redetermine custody or bond because Petitioner is subject to "Mandatory Detention under *Matter of M-S & Matter of Q. Li*; 235(b)(1) and 235(b)(2)(A)." (Dkt. # 1, ¶ 28; Benjamin Decl., ¶ 11; Lambert Decl., Ex. H.) The order further provides:

> Respondent is not a *Rodriguez-Vasquez* or a *Maldonado-Bautista* class member. Respondent's request for an alternative finding is denied. Respondent was apprehended by Border Patrol within 24 hours of his last entry into the US without admission. He was later paroled. This is a case clearly controlled by *Matter of Q. Li*.[3]

---

[3] In the *Matter of Q. Li*, the Board of Immigration Appeals held that "an applicant for admission who is arrested and detained without a warrant while arriving in the United States . . . and subsequently placed in

ORDER - 3

(Lambert Decl., Ex. H.) The record does not reflect whether Petitioner appealed this order.

On March 30, 2026, Petitioner filed this habeas petition, alleging that Respondents violated his due process rights by: (1) detaining him without providing written notice explaining the basis for revoking his release; (2) failing to assess whether he presented a flight risk or danger to the community; and (3) failing to provide a hearing before a neutral decisionmaker at which ICE bore the burden of justifying redetention. (Dkt. # 1 at 2.)

## II.   LEGAL STANDARDS

### A.   Habeas Petitions

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). A petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

Respondents argue that Petitioner's due process challenge to the revocation of his release fails because any prior conditions of release were effectively dismissed in 2022, and ICE has now taken Petitioner into custody under 8 U.S.C. § 1225(b) to initiate new removal proceedings. (Dkt. # 5 at 1.) Respondents thus contend that Petitioner is subject to mandatory detention under § 1225(b) and "entitled to no more than what a noncitizen would be entitled to upon their initial detention for removal proceedings." (*Id.* at 8.)

---

removal proceedings is detained under . . . 8 U.S.C. 1225(b), and is ineligible for any subsequent release on bond under . . . 8 U.S.C. § 1226(a)." 29 I. & N. Dec. 66, 69 (B.I.A. 2025).

ORDER - 4

## III.    DISCUSSION

**A.    Petitioner is Subject to Discretionary Detention Under 8 U.S.C. § 1226(a).**

As a threshold matter, the Court must determine which statutory provision governs Petitioner's detention, because that determination affects the procedures the government must follow. Respondents assert that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2). (Dkt. # 5 at 2, 8.) Petitioner disagrees, but argues that due process would protect his liberty interest from detention regardless of whether § 1225(b) or § 1226(a) provides the statutory basis. (Dkt. # 8 at 7-8.) The record supports the conclusion that Petitioner's detention falls under § 1226(a).

Detention of noncitizens is governed by §§ 235-36 of the INA, codified at 8 U.S.C. §§ 1225-26. Section 1226(a) provides the "default rule," allowing discretionary detention of noncitizens "already present in the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). In *Jennings*, the Supreme Court drew a clear line between the two provisions: § 1225 "applies primarily to [noncitizens] seeking entry into the United States," while § 1226 governs "the process of arresting and detaining" noncitizens "already in the country." *Id.* at 287-88. Applicants for admission are generally subject to mandatory detention under § 1225(b) and may be released only on parole "for urgent humanitarian reasons or significant public benefit[.]" 8 U.S.C. § 1182(d)(5)(A); *Jennings*, 583 U.S. at 287. The Ninth Circuit has also described § 1226 as "provid[ing] the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022).

Here, Respondents rely on out-of-circuit authority to argue that because Petitioner is an "applicant for admission" as defined in 8 U.S.C. § 1225(a), he is therefore "seeking admission"

ORDER - 5

within the meaning of 8 U.S.C. § 1225(b)(2)(A) and must be detained pending removal proceedings. (Dkt. # 5 at 2-3 (citing *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 498 (5th Cir. 2026); *Avila v. Bondi*, 2026 WL 819258, at *3 (8th Cir. Mar. 25, 2026)).) Courts in this District have consistently rejected this argument, as Respondents themselves acknowledge. (Dkt. # 5 at 3.)

Moreover, the government has treated Petitioner as subject to discretionary detention under § 1226(a) from the outset. Petitioner's 2019 NTA shows that he was not treated as seeking admission under § 1225, and the issuing officer declined to designate Petitioner as an "arriving [noncitizen]." (Lambert Decl., Ex. B.) Instead, he was designated as a "[noncitizen] present in the United States who has not been admitted or paroled." (*See id.*) This is notable because "arriving [noncitizen]" is the operative language used to define the scope of § 1225(b)(2)(a) in the implementing regulation. *See* 8 C.F.R. § 235.3(c)(1); *see also Martinez v. Hyde*, 792 F. Supp. 3d 211, 218 (D. Mass. 2025) (concluding "arriving [noncitizen]" language is synonymous with § 1225).

In addition, the 2019 Warrant for Arrest states that Petitioner was "taken into custody as authorized by section 236 of the Immigration and Nationality Act," which is codified under 8 U.S.C. §1226. (Lambert Decl., Ex. A.) The 2019 OREC likewise identifies § 236 as the authority for Petitioner's release. (*Id.*, Ex. C.)

Respondents acknowledge that OREC releases such as Petitioner's can be authorized by § 1226(a), but assert that "[p]rior to July 2025, DHS allowed discretionary releases of [noncitizens] that fit the definition of an applicant for admission" and that "DHS's prior practice of OREC releases for applicants for admission does not mean that those [noncitizens] are no longer applicants for admissions." (Dkt. # 5 at 5.) Respondents further state that in July 2025,

ORDER - 6

DHS issued a memorandum clarifying its position that such noncitizens, although previously released, are now subject to detention under § 1225(b). (*Id.* at 5.)

On that basis, Respondents argue that "the release of a noncitizen on OREC prior to July 2025 should not be determinative of whether that person's detention authority is currently governed by Section 1225(b) or Section 1226(a)." (Dkt. # 5 at 4-5.)

The Court is not persuaded. Respondents do not provide the July 2025 DHS memo but instead cite to the record in *Rodriguez v. Bostock*, one of the many cases in this District that have consistently rejected the very argument Respondents advance here. 802 F. Supp. 3d 1297, 1322-36 (W.D. Wash. 2025); *see also P.T. v. Hermosillo*, 2025 WL 3294988, at *2 n.1 (W.D. Wash. Nov. 26, 2025).

Further, the record reflects that Petitioner's current detention (initiated after the July 2025 DHS memo) is also governed by § 1226(a). His current charging document also identifies him as a "[noncitizen] present in the United States who has not been admitted or paroled" and does not designate him as an "arriving [noncitizen]." (Lambert Decl., Ex. G at 2.) The current Warrant for Arrest is likewise authorized under § 236 (§ 1226). (*Id.*, Ex. F.) Respondents' post-hoc effort to recharacterize Petitioner's detention as falling under § 1225(b) is unsupported both by the documents they submitted and by ICE's consistent treatment of Petitioner.

Petitioner has resided in the United States for approximately seven years. After his initial detention, he was released on an OREC with reporting requirements. *See Ortega-Cervantes v. Gonzalez*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the INS used the phrase 'release on recognizance' as another name for 'conditional parole' under § 1226(a)"). After Petitioner's removal proceedings were dismissed and ERO "closed his case," he was released unconditionally to live in the United States. (Benjamin Decl., ¶ 8.) Nothing in the record

ORDER - 7

supports treating Petitioner as a noncitizen seeking admission subject to § 1225(b)'s mandatory detention scheme. The Court therefore concludes that Petitioner's detention is governed by § 1226(a)'s discretionary detention framework.

Respondents contend that "even if this Court were to agree with other district courts that have found Section 1226(a) to be the operative detention authority . . . , then the appropriate process would be to implement Section 1226(a)'s 'substantial procedural protections.'" (Dkt. # 5 at 8 (citing *Rodriguez Diaz*, 53 F.4th at 1194).) Respondents do not articulate what those "substantial procedural protections" would entail in this case, and *Rodriguez Diaz* is readily distinguishable.

In *Rodriguez Diaz,* the Ninth Circuit considered whether the procedures afforded under § 1226(a), specifically in the context of bond hearings, violated due process. 53 F.4th at 1193-94. There, the petitioner was transferred into ICE custody after serving a 276-day jail sentence following a state conviction. *Id.* at 1194. He argued that his subsequent immigration detention was unreasonably prolonged and that due process required a second bond hearing after an immigration judge denied bond at the first hearing. *Id*. at 1209.

Here, by contrast, Petitioner does not argue that his detention is unreasonably prolonged or that he is entitled to additional procedures such as a bond hearing. He instead contends that he was entitled to due process *before* ICE took him back into custody—almost four years after he had been unconditionally released to live in the United States. (Dkt. ## 1 at 10-11; 8 at 12.) His claim is thus constitutional, not statutory. Respondents' alternative argument that § 1226(a) supplies adequate procedural protection is unavailing, particularly given that an immigration judge has already declined jurisdiction based on the premise that Petitioner is detained under § 1225(b). A petitioner cannot benefit from § 1226(a)'s "substantial procedural protections" if he

ORDER - 8

is the only actor who believes they apply. Furthermore, "[s]tatutory authority to detain does not obviate Respondents' obligation to comply with due process." *Telenchana v. Hermosillo*, 2026 WL 696806, at *10 (W.D. Wash. Mar. 12, 2026).

**B.      Petitioner's Redetention Violates Due Process.**

Due process protections extend to all persons within the United States, including noncitizens, regardless of immigration status. *Zadvydas*, 533 U.S. at 693. Procedural due process requires meaningful notice and a genuine opportunity to be heard before the government infringes a protected liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). In immigration detention cases, courts in this Circuit apply the *Mathews* balancing test, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the government's countervailing interest, including fiscal and administrative burdens. *Rodriguez Diaz*, 53 F.4th at 1206-07; *see also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases).

*1.      Private Interest*

Petitioner's interest in remaining free from physical confinement after more than three years of unconditional release is a substantial liberty interest. *See Zadvydas*, 533 U.S. at 690; *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. Sept. 12, 2025). Respondents assert that "Petitioner was entitled to no more than what a noncitizen would be entitled to upon their initial detention for removal proceedings" and that detention was mandatory under § 1225(b). (Dkt. # 5 at 8.) In doing so, they gloss over the fact that Petitioner had been unconditionally at liberty for more than three years, following the unopposed dismissal of his removal proceedings, before ICE decided to arrest him based on allegations in a 2023 police report. The Court has already determined that Petitioner is not subject to mandatory

ORDER - 9

detention under § 1225(b). Under these circumstances, Petitioner's significant liberty interest weighs in his favor.

### 2. Risk of Erroneous Deprivation

The risk of erroneous deprivation weighs heavily in Petitioner's favor where, as here, the only articulated basis for his detention is Respondents' application of § 1225(b) and an unsupported allegation that he was in a relationship with a fifteen-year-old girl.(Benjamin Decl., ¶ 9.) Respondents do not allege that Petitioner has been charged with any crime arising from that police report, which is itself absent from the record. The Form I-213 submitted by Respondents offers scant detail:

> While researching [Petitioner], Alaska ERO found an OCS Report (attached) that was filed with the Anchorage Police Department on August 15, 2023, stating that a 15 year old girl, [] was in a relationship with [Petitioner] and she was asking for condoms. At the time of the OCS report [Petitioner] was 21 years old and if the report was true it would be rape.

(Lambert Decl., Ex. E at 3.)

Respondents assert that, "[b]ased on the seriousness of the allegations," Petitioner was taken into custody "with the issuance of an administrative warrant" and issued a charging document to initiate removal proceedings, purportedly under § 1225(b). (Dkt. # 5 at 6, 8.)

The initiation of removal proceedings is not, standing alone, a sufficient basis for detention, and the Court has already concluded that § 1225(b)'s mandatory detention scheme does not apply. While this Court does not adjudicate the truth of the allegation against Petitioner, there are fundamental differences between an allegation, a criminal charge, and a criminal conviction. The record here does not show that ICE informed Petitioner of the alleged basis for renewing removal proceedings, afforded him an opportunity to explain or rebut the police report, or provided any hearing at which he could contest the factual predicate for his redetention before

ORDER - 10

he was arrested. There is no indication that ICE attempted to verify the 2023 report or that it would consider releasing Petitioner if the allegations proved unfounded.

The second *Mathews* factor therefore weighs in Petitioner's favor.

### 3. Governmental Interest

Although the government has legitimate interests in enforcing the immigration laws and ensuring appearance at proceedings, Respondents identify no concrete way in which providing a short, pre-deprivation custody hearing before redetention would materially impede those interests. Custody and bond hearings already occur regularly within the existing immigration system, and courts have repeatedly found the incremental administrative burden of such hearings modest relative to the risk and consequences of erroneous detention. *See, e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). On this record, Respondents have not shown exigent circumstances—such as an immediate, specific danger, or imminent flight—that would make pre-deprivation process impracticable.

In sum, the *Mathews* factors strongly favor Petitioner. Habeas relief is therefore warranted. Given the lack of lawful process at the outset of detention and the absence of exigent circumstances, release is the appropriate and constitutionally required remedy. This conclusion aligns with a broad consensus among district courts. *See, e.g.*, *Rojas v. Almodovar*, 2025 WL 3034183, at *8 (S.D.N.Y. Oct. 30, 2025) (holding that where "detention was invalid at its inception[,]" petitioner is "entitled to release."); *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *J.Y.L.C. v. Bostock*, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025); *Zhu v. Genalo*, 798 F. Supp. 3d 400, 415 (S.D.N.Y. 2025).

ORDER - 11

**C.      Permanent Injunctive Relief**

Petitioner also seeks a permanent injunction (1) barring any future redetention without notice and a hearing at which the government must prove, by clear and convincing evidence, that he is a flight risk or a danger to the community and that no alternative conditions would mitigate those risks, and (2) barring Respondents from using GPS ankle monitors upon his release. (Dkt. # 1 at 12.)

A permanent injunction requires a "cognizable danger of recurrent violation," not just a past violation. *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003); *see Torres v. Hermosillo*, 2026 WL 145715, at *8 (W.D. Wash. Jan. 20, 2026). While the record establishes that Petitioner was redetained without constitutionally adequate process, it does not show a specific, real, and immediate threat that he will again be redetained without due process. In addition, Petitioner provides no factual development or legal authority specifically addressing the use of GPS monitors in his circumstances. Finally, the petition does not engage with the elements required for permanent injunctive relief under *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 32 (2008).

Accordingly, Petitioner's request for permanent injunctive relief is denied.

## IV.      CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

(1)      Petitioner's petition for writ of habeas corpus (dkt. # 1) is GRANTED in part.

    a.    Within **twenty-four (24) hours**, Respondents shall release Petitioner from immigration detention under conditions consistent with applicable statutory and regulatory authority; and

ORDER - 12

    b. Within **two (2) business days**, Respondents shall file a status report with the Court confirming Petitioner's release.

  (2) Petitioner's request for permanent injunctive relief is DENIED without prejudice.

  (3) The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

  Dated this 24th day of April, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 13